# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| KEVIN KENDRICK, | : | |
| Petitioner, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 00-3561 |
| NANCY BAILEY et al., | : | |
| Respondents. | : | |

## Memorandum and Order

YOHN, J.                                                          February ___, 2008

Before the court is Kevin Kendrick's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Kendrick pled guilty in state court to two counts of possession with intent to deliver a controlled substance ("PWID"), one count of rape, and one count of violating the Pennsylvania Corrupt Organizations Act, 18 Pa. Cons. Stat. § 911 ("PCOA"). The Pennsylvania Supreme Court, in another case, subsequently decided that the PCOA did not apply to conduct such as his. Kendrick presently contends that his guilty plea was not knowing and voluntary because he would not have entered into the plea agreement as to any of the charges had he known then that the PCOA did not apply to his conduct. For the reasons that follow, I find that Kendrick's guilty plea to the rape and drug charges was knowing and voluntary and, therefore, that he is entitled to resentencing by the state court, but not a new trial, on these charges.[1]

---

[1] When Kendrick filed his habeas petition, he was incarcerated at FCI–Fort Dix. He has since been paroled. Parole does not defeat the "in custody" requirement of 28 U.S.C. § 2254. *Mabry v. Johnson*, 467 U.S. 504, 507 n.3 (1984). Because petitioner is now on parole, the only practical issue appears to be the length of his parole.

## I.       Procedural Background

Kendrick entered his guilty plea on May 2, 1991, and judgment was entered against him on two counts of PWID, one count of rape, and one count of violating the PCOA.  Pursuant to the plea agreement, the Commonwealth recommended that Kendrick be sentenced to two concurrent terms of five to ten years imprisonment for the two PWID convictions, a term of ten to twenty years imprisonment for the rape conviction to be served consecutive to the PWID sentence, and a term of ten to twenty years on the PCOA conviction to run concurrently with the rape sentence and consecutive to the PWID sentences.

In exchange for Kendrick's pleading guilty, promising not to commit crimes in the future, and promising to cooperate fully and testify truthfully in the Commonwealth's investigation and in the trials of his codefendants, Kendrick received the Commonwealth's agreement to note his cooperation to the sentencing court, to recommend that the sentence on the charges run concurrently with another sentence petitioner was then serving, to nolle prosse all remaining bills pertaining to the case, and to recommend that he serve his sentence in an institution outside Pennsylvania for his protection.

On January 28, 1992, the trial court followed the recommendation in the plea agreement and sentenced Kendrick to an aggregate term of fifteen to thirty years.  Sometime after he was imprisoned on these charges, a prison official filled out an "institutional classification summary" based on an interview the official had with Kendrick, during which Kendrick asserted he "is not actually guilty of the rape."[2]  The official also noted that Kendrick "tended to downplay all of his

_____

[2] The form is not dated or signed, and the name of the prison official who interviewed Kendrick and filled out the form is not included.

2

criminal activity."

Kendrick did not directly appeal his convictions or sentence.  On September 2, 1994, his attorney filed an amended petition pursuant to the Pennsylvania Post Conviction Relief Act, 42 Pa. Cons. Stat. §§ 9541-9546 ("PCRA"), attacking the legality of the PCOA conviction and arguing that Kendrick was entitled to a resentencing with respect to the other convictions.  On June 26, 1996, he filed a supplemental memorandum applying the Pennsylvania Supreme Court's holding in *Commonwealth v. Besch*, 674 A.2d 655 (Pa. 1996),[3] to the facts of Kendrick's case and again requesting a resentencing on the rape and drug charges.  The Court of Common Pleas of Philadelphia County denied Kendrick's PCRA petition, finding that his guilty plea was valid. Kendrick appealed to the Superior Court of Pennsylvania, again seeking remand for resentencing, and the Superior Court affirmed.  *See* 704 A.2d 1118 (Pa. Super. Ct. 1997) (unpublished table decision).  The Pennsylvania Supreme Court denied Kendrick's petition for review.  *See Commonwealth v. Kendrick*, 742 A.2d 672 (Pa. 1999) (unpublished table decision).

On July 14, 2000, Kendrick filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, in this court.  He argued that his guilty plea was invalid as to the PCOA charge and requested a resentencing with respect to the rape and PWID convictions.  He did not attack the validity of his rape and drug convictions.  On October 24, 2001, this court issued an order adopting the magistrate judge's report and recommendation that concluded *Besch* did not apply

---

[3] *Besch* held that "the PCOA was 'intended to criminalize only conduct involving otherwise legitimate business enterprises, and not enterprises (such as the drug enterprise in *Besch*) that were wholly illegitimate.'" *Kendrick v. Dist. Attorney of Phila.*, 488 F.3d 217, 218 (3d Cir. 2007) (quoting *Kendrick v. Dist. Attorney of Phila.*, 916 A.2d 529, 531-32 (Pa. 2007)). The decision was contrary to prior decisions of the Pennsylvania Superior Court and did not address its retroactive application.

retroactively to cases on collateral review, denying Kendrick's habeas petition, and declining to issue a certificate of appealability.  Kendrick then filed with this court the following documents: "Petition to District Court for Issuance of Certificate of Appealability," "Affidavit in Support of Petition for Issuance of Certificate of Appealability on Appeal from Denial of Writ of Habeas Corpus," and a notice of appeal.[4]  Around the same time, Kendrick also sent a letter to this court explaining, for the first time, that he had "pleaded guilty to charges for which I was innocent."[5]

While the habeas petition was pending in the Third Circuit, Kendrick apparently filed in Pennsylvania Superior Court on May 14, 2003 a petition for reconsideration nunc pro tunc of the denial of his petition for correction of records and on June 11, 2003 a "Petition for Discharge the Petitioner and Reduction of Sentence Imposed Violation of Agreement with District Attorney." The Superior Court denied the petitions on July 1, 2003 and July 16, 2003, respectively, and denied an application for reconsideration on August 22, 2003.

Meanwhile, back in federal court, the Third Circuit on April 23, 2003 agreed to hear Kendrick's appeal from this court's denial of his habeas petition.  The Third Circuit certified the question of *Besch*'s retroactivity to the Pennsylvania Supreme Court, which held on February 20,

---

[4] The documents were docketed on January 18, 2002.  The attached certificate of service is dated November 16, 2001.

[5] Kendrick does not specify *which* charges.  I assume he is referring to the rape or PWID charges, or both, but he could also have referred to the PCOA charge.

The copy of the letter provided by Kendrick's attorney after the hearing on the validity of the guilty plea is dated November 16, 2001.  The original letter sent to this court, stored in the file maintained by the Clerk's office, does not have the specific date filled in (i.e., is dated "November     , 2001").  I will assume this letter was sent at the same time as the notice of appeal, petition for issuance of a certificate of appealability, and accompanying affidavit.  The letter was, of course, irrelevant to the court since the matter was then on appeal to the Third Circuit and no motion for reconsideration was filed.

4

2007 that "*Besch* did not establish a new rule of law." *Kendrick*, 916 A.2d at 541.  Thus, *Besch*

applied retroactively.  Given the retroactivity of *Besch*, the parties agreed that Kendrick's PCOA

conviction should be vacated, but disagreed about the appropriate remedy.[6]  The Third Circuit

concluded in its decision filed on June 7, 2007:

> It is certainly possible that knowledge of [the Pennsylvania Supreme Court's]
> interpretation of the [PCOA] would have influenced Kendrick's decision to plead
> guilty.  On the other hand, it is also possible that Kendrick would have pled guilty to
> the rape charge, the sentence which was to run concurrently with the PCOA sentence,
> even if there had been no PCOA charge.  Under the circumstances, we believe it
> prudent to give the District Court the opportunity to make a finding as to whether
> Kendrick's plea was made knowingly and voluntarily.  We suggest no view on that
> matter.  We note that a similar issue arose before another panel of this court which
> issued an opinion in *McKeever v. Warden SCI-Graterford*, 486 F.3d 81, on May 10,
> 2007.  We suggest that upon remand the District Court consider that opinion in
> making its determination.[7]

*Kendrick*, 488 F.3d at 220 (footnote added).  After soliciting the views of counsel as to the

appropriate remedy and holding oral argument, I issued an order on October 1, 2007 vacating

Kendrick's conviction with respect to the PCOA charge as directed by the Third Circuit and

scheduling a hearing to determine whether Kendrick's plea was knowing and voluntary.

---

[6] Because the PCOA sentence ran concurrently with the rape sentence, and the rape
sentence's validity had not been questioned, the Commonwealth argued that there was no need to
remand for resentencing.

[7] In *McKeever*, the habeas petitioner had pled guilty in state court to, inter alia, two
PCOA counts that were later held to be invalid.  He, in contrast to Kendrick, sought rescission of
the guilty plea agreement and a new trial.  The district court had granted his writ of habeas corpus
and stayed the writ for 180 days so that the Commonwealth of Pennsylvania could vacate the
petitioner's PCOA convictions and resentence him, but the district court had not rescinded the
plea agreement.  The petitioner then argued to the Third Circuit that the appropriate remedy was
the rescission of the 1995 (i.e., pre-*Besch*) plea agreement.  The Third Circuit held that the
PCOA charges "were not an essential part of the agreed exchange, [and so] rescission of the plea
is not necessary."  *Id.* at 89.  The court left the precise remedy in the hands of the
Commonwealth.

5

At that hearing, held on January 9, 2008, Kendrick testified on his own behalf.  He also entered into evidence the institutional classification summary.  The Commonwealth introduced into evidence a copy of the plea agreement signed by Kendrick, the First Judicial District of Pennsylvania's court summary listing the charges that had been filed against Kendrick and their disposition, the transcript of Kendrick's plea colloquy, and the transcript of Kendrick's sentencing.  No witnesses other than Kendrick testified.  The parties stipulated that, if called to testify, the assistant district attorney who negotiated the plea and one of the assistant district attorneys who signed the letter explaining the plea agreement would have no recollection of the plea negotiations.  Neither party called the attorney who represented Kendrick during the plea negotiations.

After the hearing, in response to this court's request that Kendrick submit to the court copies of any filings or other submissions evidencing any request by Kendrick for a new trial or any argument that he was actually innocent of the other crimes, Kendrick's attorney submitted copies of the following:  Kendrick's petition to the district court for issuance of a certificate of appealability, affidavit in support of this petition, and notice of appeal to the Third Circuit, all docketed on January 18, 2002 but dated November 16, 2001; his letter to this court dated November 16, 2001; his petition to the Pennsylvania Superior Court for reconsideration nunc pro tunc of the denial of his petition for correction of records dated May 14, 2003; and his petition for discharge and reduction of sentence dated June 11, 2003.

## II.    Standard for a Plea to Be Knowing and Voluntary

Because a guilty plea "is more than a confession which admits that the accused did

various acts," and "is itself a conviction," the record of the plea colloquy must reflect that the plea was entered knowingly and voluntarily. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). "Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial," including the privilege against compulsory self-incrimination, the right to a trial by jury, and the right to confront one's accusers. *Id.* at 243. Thus, the trial court must "make sure [the defendant] has a full understanding of what the plea connotes and of its consequence," creating "a record adequate for any review that may be later sought." *Id.* at 244.  The trial court must satisfy itself that "the defendant understands the nature of the charges, his right to a jury trial, the acts sufficient to constitute the offenses for which he is charged and the permissible range of sentences." *Id.* at 244 n.7 (quoting *Commonwealth ex rel. West v. Rundle*, 237 A.2d 196, 197-98 (1968)).

"A transcript showing full compliance with the customary inquiries and admonitions furnishes strong, although not necessarily conclusive, evidence that the accused entered his plea without coercion and with an appreciation of its consequences." 977 F.2d 81, 84 (3d Cir. 1992). The Third Circuit has noted that, when the question is whether a guilty plea was knowing and voluntary, "the outcome is often determined by the allocation of the burden of proof." *Id.* When challenging a guilty plea, "a defendant has the burden of persuasion to establish that a plea was neither intelligent nor voluntary." *Id.* at 85.

Relevant to the question whether a plea is knowing and voluntary, as stated by the Third Circuit in *Kendrick*, 488 F.3d at 220, is whether knowledge of the correct interpretation of the PCOA would have "influenced" the petitioner's decision to plead guilty.  Rescission of the entire plea agreement would be appropriate, however, only if the PCOA charges were an "essential

part" of the agreed exchange. *McKeever*, 486 F.3d at 89; *see also id.* at 89 n.10 ("There may be a case in which events subsequent to a multi-count plea render the defendant innocent of a count which is so central to the bargain between the parties that vacating the plea is the only constitutionally permitted remedy.").

III.    **Validity of Petitioner's Plea**

The Third Circuit has directed me to "make a finding as to whether Kendrick's plea was made knowingly and voluntarily." *Kendrick*, 488 F.3d at 220. I find that the parties' lack of knowledge of the correct interpretation of the PCOA did not sufficiently influence Kendrick's decision to plead guilty and was not sufficiently central to the bargain to render the entire plea agreement invalid. The plea colloquy conformed with constitutional requirements; Kendrick waited many years after his conviction (and after he had completed a full trip through the state court system) to allege that he was actually innocent of the rape and PWID charges and to request a new trial rather than just a resentencing on those charges; and Kendrick's testimony before this court was not credible.[8] Under the circumstances, I find that Kendrick's guilty plea was knowing and voluntary.

First, the plea colloquy engaged in by Kendrick, the Commonwealth, and the court before Kendrick entered his guilty plea on May 2, 1991 was extensive, thorough, and met all

_____

[8] Furthermore, although Kendrick argued at the hearing that most of the discussion of the plea agreement centered on the PCOA charge, the Commonwealth correctly noted that each party received benefits of the bargain that had nothing to do with the PCOA charge, *see supra* note 2 (listing the provisions of the plea agreement).

constitutional requirements.[9]  Initially, the court assured itself that Kendrick could understand the proceedings.  (Plea Colloquy Tr. 3, May 2, 1991.)  The court then explained to Kendrick that he was giving up his right to a jury trial (*id.* at 4-7), his right to present his own witnesses and to challenge the government's witnesses (*id.* at 7-8), and other associated trial and appellate rights (*id.* at 8-10).  The Commonwealth explained the terms of the plea agreement, including the combined recommended sentence of fifteen to thirty years.  (*Id.* at 12-16.)  Kendrick agreed that he had read the agreement with his attorney and had signed it.  (*Id.* at 18, 20.)  Kendrick was represented by one of the area's most experienced and able trial lawyers, A. Charles Peruto, Sr. Then the judge explained that the Commonwealth would state the elements of the charged crimes and the facts that would be proven at trial, and the judge made clear that he would give Kendrick an opportunity to add to, subtract from, or change any of the facts presented by the Commonwealth.  (*Id.* at 20.)  One assistant district attorney then explained the elements of and facts supporting the rape and PWID charges, including the maximum sentences and fines.  (*Id.* at 21-32.)  Specifically, with respect to the rape, the Commonwealth explained that, if it went to trial, it would prove that Kendrick had gone into the bedroom where the victim was watching television and proceeded as follows:

> [H]e got on top of her, pulled her shorts and her underwear off without her
> permission.  He then requested sexual intercourse, and she said no.  In fact, she bit

_____

[9] I note, however, that at the beginning of the plea colloquy the court misstated the maximum sentence that could be imposed.  (*See* Plea Colloquy Tr. 2-3, May 2, 1991 ("Now, you should understand, Mr. Kendrick, that the maximum sentence that could be imposed on all of these crimes taken together is fifteen years in prison, and a hundred thousand dollar fine.").)  This misstatement is insufficient to void the plea agreement, since the ADA stated the correct sentencing range during his explanation of the plea agreement, the correct sentencing range was spelled out in the plea agreement signed by Kendrick after having discussed it with his attorney, and Kendrick has not asserted that he was misled by the judge about the length of the sentence.

the defendant at one point.

> Defendant took a gun, put it to her head, and forced her to engage in sexual intercourse . . . . Defendant then forced the victim to get on top of him while having the handgun in his hand while the defendant was ejaculating.
>
> He relaxed his hand, thereby allowing the victim to take the gun, smack him in the head, jump off the defendant, and she ran bottomless outside of the house, screaming, crying for the police. This brought people that were walking around in the neighborhood out, and they call[ed] the police. The police arrived minutes later.

(*Id.* at 23-24.) In addition to calling the victim and responding police officer to testify regarding the rape, the Commonwealth would also have called the upstairs neighbor in the apartment building where the rape took place, who would explain "that she was upstairs in her apartment, that she heard the screams and saw the complainant run outside, saw the defendant exiting out the back door. And she would identify that apartment as being this defendant[']s apartment." (*Id.* at 26.) Another assistant district attorney explained the elements of and facts supporting the PCOA charge, again including in his explanation the maximum sentence and fine (*id.* at 32-44).

Following these explanations, Kendrick agreed that he heard the Commonwealth's explanations and understood the elements of the offenses. (*Id.* at 44.) The judge asked Kendrick, "And is there anything you wish to change, either to add to or subtract from, with the facts that [the Commonwealth has] indicated here?" and Kendrick replied, "No, Your Honor." (*Id.*) An assistant district attorney then asked Kendrick whether he understood that "by pleading guilty today, you're admitting that all those facts are true and correct." (*Id.* at 45-46.) Kendrick affirmatively stated that he understood. (*Id.* at 46.) After being reminded once again by the judge that he would be admitting all the facts explained by the Commonwealth, Kendrick affirmed that he wished to give up his right to a trial and wished to plead guilty. (*Id.* at 46-47.)

The trial judge accepted the plea agreement.[10]

Sentencing occurred on January 28, 1992.  At the sentencing hearing, the Commonwealth reiterated the relevant terms of the plea agreement (Sentencing Tr. 2-3, Jan. 28, 1992), and Kendrick's attorney then argued in favor of a sentence lower than the recommendation in the plea agreement (*id.* at 4-7).  Kendrick spoke briefly to the court (*id.* at 10), and then the court imposed the sentence recommended in the plea agreement (*id.* at 11).[11]  At the sentencing, Kendrick's lawyer explained to him on the record that he had been sentenced within the guidelines and so had "practically no thought of succeeding" on appeal with respect to the legality of the sentence. (*Id.* at 13.)  Kendrick did not file a direct appeal.

Second, Kendrick later initiated collateral proceedings attacking his PCOA conviction and sentence.  In his PCRA petition, Kendrick did not argue that his sentence was illegal, except to the extent that he was convicted and sentenced under the PCOA, which did not actually criminalize his conduct. Kendrick's amended PCRA petition, filed by his attorney on September 2, 1994, asserted the following:  Kendrick is innocent of the PCOA conviction; the plea agreement was negotiated under a mutual mistake (namely, that Kendrick was guilty of the alleged PCOA violation) and that this mistake was sufficient to prevent either party from being

---

[10] Kendrick has not argued that the trial court's decision to accept the plea bargain with respect to the rape and PWID charges was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  My review of the plea colloquy transcript does not indicate any such deficiency.

[11] Kendrick has not argued that the sentencing court's imposition of a sentence of fifteen to thirty years for the rape and PWID convictions was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Here, too, my review of the record does not indicate any such deficiency.

bound by the negotiations; Kendrick would not otherwise have pled guilty and acquiesced to a fifteen to thirty year prison term; and Kendrick is entitled to a resentencing because, had the trial judge recognized the invalidity of the PCOA charge, he would have imposed a lesser sentence due to Kendrick's extensive cooperation with the government.   Neither Kendrick's amended PCRA petition nor his arguments on appeal of its denial asserted any other defects in the plea. Instead, on appeal to the Pennsylvania Superior Court, Kendrick argued that his guilty plea was invalid and he was entitled to a resentencing because, given the Pennsylvania Supreme Court's decision in *Besch*, he did not and could not have violated the PCOA; his guilty plea to the PCOA charge was involuntary because it was the result of a misunderstanding of the law; the guilty plea resulted in punishment for conduct that was not criminal; and he has a right to urge the trial court to impose a lesser sentence than the one recommended in the plea agreement.   In his petition for allowance of appeal in the Pennsylvania Supreme Court, Kendrick made essentially the same arguments, again requesting only a resentencing.   Kendrick did not ask any of the state courts to overturn his rape and PWID convictions, and he did not allege that he was actually innocent of these crimes or that these convictions were otherwise invalid.   He did not ask for a new trial on them.

Kendrick's habeas petition filed in this court on July 14, 2000 likewise requested only a resentencing "on the charges to which he pled guilty to—absent the [PCOA] charge." (Mem. Supp. Pet'r's Habeas Claims 17.)   Again, he did not allege that he was actually innocent of rape or PWID, and he did not request a new trial.   The sole ground asserted for relief in his habeas petition was that "Petitioner is entitled to a re-sentencing because contrary to what was believed at the time of his guilty plea and sentencing, he did not and could not have committed the crime

12

of corrupt organizations." (*Id.* at 14.)

Third, pursuant to the Third Circuit's direction, on January 9, 2008, this court held a hearing on the question whether Kendrick's guilty plea was knowing and voluntary. Kendrick testified, but I do not find him to be a credible witness. For example, Kendrick testified that the sexual intercourse underlying the rape conviction was consensual and that no gun was used, even though he stated that the opposite was true during his plea colloquy. He stated that the drugs underlying the PWID conviction were not his, and that he only ever sold cocaine powder (not "caps"). At his plea colloquy, he admitted that contrary facts stated by the ADA were true. (Plea Colloquy Tr. 46.) At the hearing, he alleged being pressured by attorneys and detectives to plead guilty. At the plea colloquy, he did not contest the ADA's statement that before the plea agreement was signed "there was a conference between [Kendrick] and [his attorney], that conference lasted for over four hours. [Kendrick] was given an opportunity to call various family members, including an attorney in California. So, he had an opportunity to discuss his decision in relation to this case with anyone that he wished to." (*Id.* at 18-19.) Considering the extensive guilty plea colloquy that included admissions by Kendrick that he had committed the rape and the drug offenses (and particularly that he had used a gun during the commission of the rape), and his failure to attack the validity of these convictions for many years, I find that Kendrick's testimony that he did not commit the rape and drug offenses not worthy of belief.

Kendrick entered into evidence as his only support for his newly articulated claim that he was not guilty of the rape and PWID charges the institutional classification summary filled out by an unnamed prison official after an interview on an undisclosed date with Kendrick after his confinement in a Pennsylvania state correctional institution after sentencing. According to the

form, "Kendrick admits that he plead[ed] guilty to the rape of a 22 year old woman, but states that it was part of a deal and he is not actually guilty of the rape. . . . His closing statement on this matter was 'I plead[ed] guilty—but I didn't rape her.'"  The prison official also noted, however, that "Kendrick tended to downplay all of his criminal activity" and that "[K]endrick seems rather unconcerned over his plight.  He received a long prison term, but feels that he will win and gain an early release through the legal system."

Finally, after the hearing, his attorney submitted additional evidence of Kendrick's desire that the guilty plea be vacated in its entirety and the case remanded for a new trial.  However, Kendrick had not submitted any of these documents—or, apparently, any others protesting his innocence and requesting a new trial—to any court, state or federal, prior to late 2001, more than five years after *Besch* was decided and ten years after he pled guilty to the rape and PWID charges.

In his "Affidavit in Support of Petition for Issuance of Certificate of Appealability on Appeal from Denial of Writ of Habeas Corpus" filed in this court on January 18, 2002 (after this court's denial of his § 2254 petiton), Kendrick first asked for a new trial.  In his affidavit, Kendrick stated, "The [P]COA charge[] needs to be vacated and Kendrick[] re-sentence[d] or re-trial to ref[l]ect appropriate [s]entence where the rest of the charges [are] not [l]ikely for a conviction."  (Kendrick Aff. ¶ 4.)  In his accompanying notice of appeal, also filed on January 18, 2002, he asked the Third Circuit "to vacate inappropriate [PCOA] for re-sentence or new trial."[12]  Kendrick also sent a letter to this court explaining that he had "pleaded guilty to charges

---

[12] In his "Petition to the District Court for Issuance of Certificate of Appealability," likewise filed on January 18, 2002, Kendrick asserted that "[w]ith out this [PCOA] conviction [the] rest of the [charges] would ha[ve] fallen."  In support of this argument, Kendrick quoted

for which I was innocent" because "I was not aware of the ramification[s] of my lawyer['s] advice" and "feel that my lawyer['s] advice was truly wrong."[13]

In his petition, filed in the Pennsylvania Superior Court on May 14, 2003, for reconsideration nunc pro tunc of the denial of his petition for correction of records, Kendrick similarly explained that "petitioner has demonstrated there are errors pertaining to his records and an invalid bill," i.e., the PCOA conviction. "Petitioner is innocent of the [PCOA conviction]." He requested that the Pennsylvania Superior Court "remand this case back to the Common Plea[s] court to correct all invalid records and bills." Again, in his petition for discharge filed in the Pennsylvania Superior Court on June 11, 2003, he asked for an order "correcting said sentences and directing the petitioner be [d]ischarge[d] for[th]with on said charges." He explained that he pled guilty because of the PCOA charge—"this was the major influence to the other bills."[14]

As explained, I held a hearing pursuant to the Third Circuit's statement that it is "prudent to give the District Court the opportunity to make a finding as to whether Kendrick's plea was made knowingly and voluntarily." *Kendrick*, 488 F.3d at 220. The Third Circuit explained the

---

from the transcript of his sentencing, at which his attorney stated, "I would also point out to Your Honor, that in the rape case, there's not that tremendous overwhelming likelihood of conviction." (Sentencing Tr. 5.) This statement was made in the context of asking for a lenient sentence, not in asking for the guilty plea to be invalidated or a new trial to be imposed. Kendrick's attorney at no time stated that his client was actually innocent of the rape, and Kendrick did not until late 2001 suggest that he was actually innocent of any charges other than the PCOA violation.

[13] A claim of ineffective assistance of counsel is not before me.

[14] As noted above, both this petition and an application for reconsideration were denied. Kendrick has not argued that the Superior Court's decision to deny the petition was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

alternative conclusions: either "knowledge of [the correct] interpretation of the [PCOA] would have influenced Kendrick's decision to plead guilty" or "Kendrick would have pled guilty to the rape charge, the sentence which was to run concurrently with the PCOA sentence, even if there had been no PCOA charge." *Id.*

Summing up the evidence, I find that the extensive guilty plea colloquy conducted by the trial court set forth the facts relating to the rape and drug charges in great detail, and Kendrick agreed to those facts. The paper record suggests that it was not until some point in late 2001, ten years after his guilty plea, that Kendrick began to wish for a new trial, rather than a resentencing, on the rape and drug charges and began to allege his innocence of the rape and PWID charges. Finally, I find Kendrick not to be a credible witness and so do not credit his testimony that he would not have pled guilty of the rape and drug charges if he knew that the PCOA charge was invalid. For these reasons, I do not believe that his decision to plead guilty to the rape and drug charges was influenced by the incorrect interpretation of the law relating to the PCOA. The petitioner has the burden of persuasion that his plea was not knowing and voluntary; I conclude that Kendrick has not met his burden and I find that Kendrick's guilty plea to the rape and drug charges was knowing and voluntary. Thus, I will not vacate these convictions, and I will not remand the case to state court for a new trial. Instead, following the Third Circuit's well-reasoned opinion in *McKeever*,[15] I will remand the case to state court for resentencing on the

---

[15] In *McKeever*, the Third Circuit noted that the district court "was correct in granting McKeever's writ of *habeas corpus* but leaving the precise remedy in the hands of the Commonwealth." 486 F.3d at 85. "Both the historic nature of the writ and principles of federalism preclude a federal court's direct interference with a state court's conduct of state litigation." *Id.* (quoting *Barry v. Brower*, 864 F.2d 294, 300 (3d Cir. 1988)).

remaining charges in light of my prior order vacating Kendrick's PCOA conviction.[16]

An appropriate order follows.

---

[16] I, of course, offer no view on what that sentence should be, since that is a matter solely for the state court.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KEVIN KENDRICK,
     Petitioner,

     v.

NANCY BAILEY et al.,
     Respondents.

:
:
:
:
:
:
:
:

CIVIL ACTION

NO. 00-3561

## Order

YOHN, J.

     AND NOW, this _____ day of February 2008, upon careful consideration of Kevin Kendrick's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, the Third Circuit's opinion in *Kendrick v. Dist. Attorney of Phila.*, 488 F.3d 217 (3d Cir. 2007), the government's and petitioner's argument heard at the January 9, 2007 hearing in this matter, and the parties' other submissions, IT IS HEREBY ORDERED that:

1.     The court finds that Kendrick's guilty plea to the rape and drug charges was knowing and voluntary.

2.     The petition for a writ of habeas corpus is GRANTED to the extent that the conviction for violating the Pennsylvania Corrupt Organizations Act, 18 Pa. Cons. Stat. § 911, is vacated and the matter is REMANDED to the Court of Common Pleas of Philadelphia County for resentencing on the rape and possession with intent to deliver charges.

3.     Execution of the writ is STAYED for 180 days from the date of this Order to permit the Commonwealth to confirm the vacating of Kendrick's conviction related to the Pennsylvania Corrupt Organizations Act and resentence him on the rape and possession

with intent to deliver charges.  If the Commonwealth fails to vacate the Pennsylvania

Corrupt Organizations Act conviction and resentence Kendrick on the remaining charges,

the writ shall issue, and Respondents shall release Kendrick from any incarceration or

other restraint imposed by these convictions.

4.      The Clerk shall CLOSE this matter for statistical purposes.


                                                    _____s/ William H. Yohn Jr._____
                                                    William H. Yohn Jr., Judge